```
                     UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                        )
CHARLENE PICARD, Individually and       )
as Administratrix of the Estate of      )
TIMOTHY R. PICARD, SR.,                 )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )    C.A. No. 09-318 S
                                        )
CITY OF WOONSOCKET, et al.,             )
                                        )
          Defendants.                   )
_____)

## OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

　　Plaintiff Charlene Picard, individually and as Administratrix of the Estate of Timothy Picard, Sr., filed a Complaint for damages arising out of a 9-1-1 police response that resulted in the death of Timothy Picard, Sr. ("Picard") against the City of Woonsocket ("the City"), the police department, Police Chief Michael Houle, several police officers, the fire department, Fire Chief Henry Renaud ("Renaud"), and several unnamed fire department personnel.

　　The Woonsocket fire department and Fire Chief Renaud, named individually and in his official capacity (collectively the "Fire Defendants") moved to dismiss the Complaint asserting that it fails to state a claim upon which relief can be granted. In

particular, the Fire Defendants argue that the fire department is not a separate entity from the City, and the Fire Defendants are immune from liability on the basis of the public duty doctrine, R.I. Gen Laws §§ 9-1-27 and 39-21.1-1 et seq. and qualified immunity.[1]  In her opposition to the motion Plaintiff moved to amend her Complaint.  Fire Defendants then objected to her motion to amend and filed a Reply, asking the Court to dismiss the Amended Complaint on the same grounds of inadequacy.

At the hearing, the Court granted the parties additional time to conduct discovery on the narrow issue of whether the fire department was a separate entity from the City.  The parties filed supplemental briefs and the issue is now ripe for decision.  See, e.g., In re Cabletron Sys., Inc., 311 F.3d 11, 33 (1st Cir. 2002) (collecting fraud cases where limited discovery was permitted before deciding merits of motions to dismiss).

---

[1] At hearing, counsel for the Fire Defendants stated that he did not represent the unnamed fire personnel, and the Motion to Dismiss does not include those Defendants.  The Fire Defendants also initially alleged improper service against Fire Chief Renaud; however, Plaintiff docketed the summons and complaint, which was served upon Renaud on August 12, 2009, rendering the issue moot.  Because Plaintiff's claims against the Fire Defendants are dismissed on the grounds that the fire department is not a separate entity from the City and qualified immunity, the Court does not reach the remaining immunity arguments asserted by the Fire Defendants.

As explained below, the Court agrees that the Amended Complaint[2] fails to survive scrutiny under Rule 12(b)(6) with respect to the allegations against the Fire Defendants. Therefore, the Fire Defendants' Motion to Dismiss the Amended Complaint is GRANTED and the claims against the Woonsocket fire department and Fire Chief Henry Renaud, in his individual capacity, are dismissed.[3]

I. Standard of Review

Fed. R. Civ. P. 8(a) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule and the standard governing the

---

[2] Plaintiff is entitled once as a matter of course to amend her complaint before a responsive pleading is filed. See Fed. R. Civ. P. 15(a)(1)(A). Because the Fire Defendants have not yet answered but filed a motion to dismiss, Plaintiff could have filed an amended complaint without seeking leave to do so from the court. See id.; see also Fed. R. Civ. P. 12(b) (requiring motions to dismiss under Rule 12(b) to be filed before the responsive pleading is filed); see Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990) (overruled on other grounds) (Rule 12(b) motion to dismiss is not a responsive pleading). Therefore, the Court grants the Plaintiff's motion to amend her Complaint, and continues to consider the Fire Defendants' motion to dismiss as applied to the Amended Complaint. Fire Defendants argue that the Amended Complaint still fails to overcome the Fire Defendants' motion.

[3] As a result, the claims against the Fire Chief in his capacity as policymaker are subsumed with the Monell claims filed against the City of Woonsocket. Plaintiff's counsel noted at hearing, "I would agree, your Honor, that if all of the actions of the fire department and Chief Renaud and the various John, Richard Does listed in the Complaint were subsumed within the City of Woonsocket that they would not need to be separately named." (Hr'g Tr. 30:9-13, Nov. 4, 2009.)

instant 12(b)(6) challenge have recently taken on a greater and more serious bite.  See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  To be sure, the new pleading rules do not require detailed factual allegations but do "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  A complaint needs sufficient factual matter to state a claim to relief that is "plausible on its face."  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Of course, plausibility is "context-specific, requiring the reviewing court to draw on its judicial experience and common sense."  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  What is critical is that the complaint supplies enough to push a plaintiff's right to relief past the "sheer possibility" threshold from merely conceivable or speculative to actually probable or plausible.  Iqbal, 129 S. Ct. at 1949-50 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

 The First Circuit has said that "affirmative defenses . . . may be raised in a motion to dismiss an action for failure to state a claim."  Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (citing Keene Lumber Co. v. Leventhal,

4

165 F.2d 815, 820 (1st Cir. 1948)).  In order to obtain dismissal for failure to state a claim on the basis of an affirmative defense, the facts establishing the defense "must be clear 'on the face of the plaintiff's pleadings[,]' [and] review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6), must 'leave no doubt' that the plaintiff's action is barred by the asserted defense."  Id. (internal citations omitted).

II. Factual Background

The following facts are based upon Plaintiff's allegations in the Amended Complaint.  On August 20, 2006, Charlene Picard called 9-1-1 requesting emergency medical assistance.  The 9-1-1 dispatcher contacted the fire department and an unknown member of the fire department (hereinafter "Richard Doe") determined that the fire department would not respond to the call and requested that the police department be dispatched instead. Plaintiff alleges that Richard Doe acted in contravention to the procedures and regulations of the fire department, which provide:

> ALARM RESPONSES
>
> If you are in doubt of any call received, notify the Deputy Chief.  He will inform you which apparatus should respond to an incident.  If the Deputy is not available and you are in doubt, dispatch a full complement to the incident.  At no time will a dispatcher make a decision not to send out apparatus on his or her own.  Only the Fire Chief, Deputy Chief,

5

> Superintendent of Fire Alarm or Fire Alarm Officer can make such a decision.

(Pl.'s First Am. Compl., Doc. 24-1, ¶ 66.)

The 9-1-1 dispatcher then contacted the Police Department and law enforcement officers, Justin Glode and David Antaya, were dispatched to the Picard home. When the officers arrived at approximately 3:15 a.m., Plaintiff Charlene Picard was outside her home, while Timothy Picard was inside. The officers entered the home and placed Picard under arrest. During the arrest, the officers used Capstun Oleoresin Capsicum – a chemical spray - on Picard. Officers Patrick McGourty and Christopher Brooks also arrived at the scene to assist in the arrest. Picard was handcuffed and placed in the police cruiser. Plaintiff alleges that Picard was exhibiting strange behaviors throughout this ordeal, including banging his head against the car window. After arriving at the police station, Plaintiff alleges Officer Brooks shot Timothy Picard with a Taser[4] gun three times without justification, including while Picard was handcuffed and already on the floor from the previous two shots. At 4:45 a.m. Picard was pronounced dead.

---

[4] Although the use of a "Taser" gun is alleged by Plaintiff in the Amended Complaint, this is merely one brand of an electronic gun used by law enforcement that delivers an electric shock. See Parker v City of South Portland, No. 06-129-P-S, 2007 WL 1468658 (D. Me. May 18, 2007).

Plaintiff filed suit against the City and the various officers involved, as well as against the fire department and its members. The action, among other things, alleges that the Fire Defendants are liable for deprivation of Jason's civil rights and they have committed violations of the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution (actionable pursuant to 42 U.S.C. §§ 1983 and 1988), as well as for violations of Art. 1, §§ 5, 6, 8, and 14 of the Rhode Island Constitution.[5] Plaintiff also asserts state law claims against the Fire Defendants for negligence, negligent supervision and training, and wrongful death.

III. Analysis

    A.   Fire Department as a subunit of the City

In paragraph 4 of the Amended Complaint, Plaintiff alleges that the Woonsocket fire department is a separate entity from the City of Woonsocket.

> 4. Upon information and belief, the Defendant Woosocket (sic) Fire Department, a/k/a Woonsocket Fire Corporation, is a separate incorporated entity within the City of Woonsocket.

To begin, Plaintiff's allegations of incorporation in her Amended Complaint, based only upon "information and belief," stand on shaky ground in the face of the new pleading standards

---

[5] Although as noted, Plaintiff asserts various claims against the other named Defendants, the present motion only deals with claims asserted against the Fire Defendants.

7

set forth in Twombly and Iqbal. Fire Defendants, however, emphatically state that the fire department is not a proper defendant, because it is merely an agent or subunit of the City. See PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 827 (D.N.J. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not.") (collecting cases). In an abundance of caution the Court permitted further discovery on this narrow issue and invited the parties to file supplemental briefs.[6]

After carefully considering the parties' supplemental arguments it is apparent that the fire department is not a separate entity, and the claims lodged against it are actually claims against the City of Woonsocket. Plaintiff's reliance upon Public Laws 1869, ch. 825 and information taken from the website entitled "The History of the Woonsocket Fire Department," available at http://woonsocketfire.org/new_page_101.htm (last visited May 26, 2010), is misplaced. Chapter 825

---

[6] At hearing, Plaintiff stated the issue as "basically, what is the relationship between the fire department and the town with regard to the manner and method in which they operate. . . . [W]e would just take the deposition of the . . City of Woonsocket . . .[to] determine[] what the relationship is between fire and the city, whether or not [there is] separate insurance, whether or not they have separate budgets, how the personnel is directed and supervised and if it's an autonomous body." (Doc. 32-1, 1:10-2:20.)

8

provides that "[a]ll that part of the town of Woonsocket chartered as the village of Woonsocket, shall, hereafter be known and called the Woonsocket Fire Corporation. . . [and] there shall be elected annually – one chief [engineer] and two assistants [sic] engineers, who shall have all the privileges and perform all the duties of the officers aforesaid."  1869 R.I. Acts & Resolves ch. 825 page no. 13.  As counsel for the Fire Defendants stated in hearing, however, the fire department that is presently before the Court, and that which was served process by Plaintiff, is a creature of the City of Woonsocket Home Rule Charter, which was enacted in 1952.  No longer the village it once was in the early 1800s, the City Charter provides that "[w]ithin the department of public safety there shall be divisions known as the police department and the fire department.  The head of each division shall be a chief who shall be appointed and be responsible to the Director of Public Safety."  Woonsocket City Charter ch. X, art. 4 § 2.  The deponent representing the City, Joel Mathews, also confirmed that like the other divisions in the City, the fire department obtains its budget from the City's general fund budget.  Indeed, the fire department generates no independent revenues, there is no fire district tax, and there are no separate financial statements prepared for the fire department.  Furthermore, any assets, including the current fire stations and the emergency

rescue vehicles, are owned by the City of Woonsocket and are also insured through the City.

Therefore, Plaintiff's allegation that an independent Woonsocket Fire Corporation exists, with separate assets and insurance from the City, is nothing more than unfounded speculation.  For these reasons, the Court holds that the fire department is not a proper Defendant and claims against the fire department are dismissed.

B.   Fire Chief Renaud:  Qualified Immunity

The remaining issue is whether the doctrine of qualified immunity protects Fire Chief Renaud for the claims against him in his individual capacity.  Plaintiff alleges various federal and state law claims against Renaud, both individually and in his official capacity.  The claims against Renaud in his official capacity, however, are no longer at issue since the Court has resolved that these claims are properly against the City.  Indeed, a claim against an official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office." Rhode Island Bhd. of Corr. Officers v. Rhode Island ("RIBCO"), 264 F. Supp. 2d 87, 92 (D.R.I. 2003) (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).[7]

---

[7] Since the City has not moved for dismissal at this time, determination of whether Monell liability exists on the basis

10

Qualified immunity protects public officials who perform discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995) (quoting Anderson v. Creighton, 483 U.S. 635 638 (1983)). Plaintiff argues that the issue of qualified immunity cannot be determined at this stage in the litigation because "[i]t is impossible to evaluate the objective reasonableness of Chief Renaud's conduct in this case in the absence of discovery."

In the federal law context it is axiomatic that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. . . . Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. Notably, the Amended Complaint also alleges Renaud committed negligent conduct; however, in Rhode Island qualified immunity may be a defense to state law claims. Hatch v. Town of Middletown, 311 F.3d 83, 89

---

that Renaud maintained unconstitutional customs, practices, or policies in the fire department, will be saved for another day.

(1st Cir. 2002) (discussing Rhode Island Supreme Court cases); see also Ensey v. Culhane, 727 A.2d 690-91 (R.I. 1999).

Qualified immunity is a two-step inquiry where the Court must determine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado, 568 F.3d at 269 (citing Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009)). The "clearly established" step is further subdivided requiring the Court to analyze whether the law was clear at the time of the alleged civil rights violation and, if it was clearly established, whether a defendant's conduct was objectively reasonable. Lopera, 652 F. Supp. 2d at 212. Qualified immunity will apply when the plaintiff fails to allege the violation of a constitutional right, the law is not clearly established or, despite the presence of clearly established law, the defendant's conduct was objectively reasonable under the circumstances. "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson, 129 S. Ct. at 815 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis deleted).

Even with all favorable inferences in favor of Plaintiffs, there are no specific allegations that support a claim of a

12

violation of any constitutional right. See Archie v. City of Racine, 847 F.2d 1211 (7th Cir. 1988) (dismissing § 1983 civil rights action against Fire Chief where he was not responsible for the actions of the dispatcher who failed to follow policy and did not send medical rescue). Plaintiff does not identify the source of any constitutional right Plaintiff allegedly has to have the fire department respond instead of the police department and "merely negligent actions or omissions by state officials do not 'deprive' a person of life, liberty, or property within the meaning of the Fourteenth Amendment, and thus are not actionable under section 1983." See Germany v. Vance, 868 F.2d 9, 11 (1st Cir. 1989) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986) (emphasis deleted)).[8]

The crux of Plaintiff's response to Fire Defendants' qualified immunity argument is that the individual liability claims against Renaud will be fleshed out in discovery; however, discovery is not the answer here. The factual allegations pertaining to Renaud in the Amended Complaint are based upon the decisions and policies he allegedly made in his capacity as a policymaker for the City of Woonsocket, and not his own actions.

---

[8] Interestingly, the first step in the qualified immunity analysis with respect to the federal claims, whether a violation of a constitutional right has been alleged, mirrors that analysis that would have occurred under Fire Defendants' 12(b)(6) motion for failure to state a claim even if qualified immunity had not raised.

See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978). The allegations show that there are fire department policies in place for those answering emergency calls and when a dispatcher is "in doubt" she or he should (1) notify the Deputy Chief; or (2) send a full complement. The policy continues that "[a]t no time will a dispatcher make a decision not to send out apparatus on his or her own." Here, however, it is alleged that the dispatcher did not follow the policy when he did not send any rescue, requesting that the police respond instead. Thus, the claims against Renaud fail because they are not based upon his own conduct.

This is precisely the type of situation where the purpose of qualified immunity would be effectively lost if the Court were to permit a discovery-based fishing expedition against Renaud. The Supreme Court has stated that the qualified immunity doctrine ensures that "'insubstantial claims' against government officials [will] be resolved prior to discovery." Pearson, 129 S. Ct. at 816 (quoting Anderson v. Creighton, 483 U.S. 635, 640, n.2 (1987)). It is also clear on the face of the pleadings that if the allegations against Renaud in the Amended Complaint were sufficient, which they are not, immunity would apply because Renaud's conduct in promulgating these policies was objectively reasonable. Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995).

For the same reasons the state law claims against Renaud must also be dismissed. Once again, Plaintiff offers no factual allegations that support Renaud was negligent in supervising or training any employees. Not only has Plaintiff failed to plead the elements of negligence with any specific facts, but Plaintiff's negligence claims are the epitome of conclusory allegations. Without this basic "sufficient factual matter" the bare-faced claims in the Amended Complaint amount to nothing more than Renaud-unlawfully-harmed-me and cannot withstand Defendants' motion. <u>Iqbal</u>, 129 S. Ct. at 1949. Therefore, Plaintiff's claims against Renaud in his individual capacity must be dismissed.

IV. Conclusion

For the reasons stated herein the Court GRANTS the motion to dismiss in favor of the Woonsocket fire department and Fire Chief Renaud, in his individual capacity.

IT IS SO ORDERED.

ENTER:

*William E. Smith*
William E. Smith
United States District Judge
Date:  May 27, 2010