```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF RHODE ISLAND

_____
                                   )
CHARLENE PICARD, Individually and  )
as Administratrix of the Estate of )
TIMOTHY R. PICARD, SR.,            )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    C.A. No. 09-318 S
                                   )
CITY OF WOONSOCKET, et al.,        )
                                   )
          Defendants.              )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court is Defendants' appeal from Magistrate Judge David L. Martin's Memorandum and Order dated April 13, 2011 (ECF No. 52 (hereinafter "Order")), granting Plaintiff's motion for a protective order imposing certain restrictions on the depositions of Individual Defendants David Antaya, Christopher Brooks, Justin A. Glode, Pamela Jallette, Patrick T. McGourty, Matthew Richardson, and Scott Strickland ("Defendants"). For the reasons set forth below, the Order is vacated, and Plaintiff's motion is granted in part and denied in part.

   I.  Background

   The summary of facts underlying this § 1983 suit set forth in the Order provides helpful context:

Around 3:00 a.m. on August 20, 2006, Plaintiff [Charlene Picard] called 911 for emergency medical assistance at the home in Woonsocket, Rhode Island, which she shared with her husband, Timothy Picard, Sr. ("Mr. Picard").  See Memorandum in Support of Plaintiff's Motion for Protective Order ("Plaintiff's Mem.") at 2.  At approximately 3:15 a.m., as a result of the 911 call, Woonsocket police officers were dispatched to Plaintiff's home.  Id. at 2-3.  Emergency rescue personnel from the Woonsocket Fire Department were never dispatched to that location.  Id. at 3.  Around 3:20 a.m. police officers David Antaya ("Antaya") and Justin A. Glode ("Glode") arrived at the Picard home.  Id.  Mrs. Picard was outside her home and Mr. Picard was inside his home dressed in boxer shorts.  Id.  According to Plaintiff, Glode and Antaya were asked to leave the premises, but refused to do so and instead proceeded to arrest Mr. Picard without a warrant and without probable cause.  Id.

Plaintiff alleges that in the course of the arrest Glode and Antaya used pepper spray on Mr. Picard in amounts that exceeded the proper recommended use and created an immediate need for decontamination and medical assistance.  Id.  Plaintiff further alleges that instead of being provided medical assistance, Mr. Picard was taken to the Woonsocket police station.  Id.

At the police station, Plaintiff claims that Mr. Picard was tasered three separate times while his hands were handcuffed behind his back.  Id.  The first instance allegedly occurred while Mr. Picard was standing at the booking window surrounded by three police officers.  Id.  The next two instances allegedly occurred while Mr. Picard was lying face down of the floor with his hands still cuffed behind his back and surrounded by five police officers one of whom had his knee in the middle of Mr. Picard's back.  Id.  According to Plaintiff, after the third tasering, Mr. Picard started to turn blue and developed heavy breathing.  Id.  He was taken by rescue to Landmark Medical Center where he was pronounced dead after unsuccessful attempts to revive him.  Id. at 3-4.  Plaintiff claims that during the approximately nine minutes from the point at which Mr. Picard began to

2

>exhibit life-threatening signs until the arrival of emergency personnel none of the five police officers administered CPR or made any attempt to place Mr. Picard in a non-life-threatening situation. <u>Id.</u> at 4.

(Order 2-5 (footnotes omitted).)

On July 20, 2009, Plaintiff filed suit in this Court alleging violations of the decedent's rights under the federal and Rhode Island constitutions, as well as various state-law claims. The parties are now in the midst of discovery, and the instant motion arises from a dispute over who may be present at the parties' depositions. More specifically, Plaintiff moved for an order excluding Defendants from each other's depositions; precluding Defendants from reading the transcripts or discussing each other's depositions until all of the depositions have concluded; and precluding Defendants from discussing each other's depositions with counsel until the conclusion of the depositions. (Plaintiff's Mem. 2.) Moreover, Plaintiff moved for an order precluding Defendants from attending Plaintiff's deposition in person, but allowing them to "access" the deposition by videoconference. (<u>Id.</u> at 9.)

In his Order, the Magistrate Judge granted Plaintiff's motion, placing the following restrictions on the Defendants' depositions: (1) "The depositions shall be conducted with no person present other than the party to be deposed, counsel, and the court reporter"; (2) "Defendants' counsel may not inform any

other Defendant, orally or through provision of a transcript, about what the other Defendants testified to at their depositions;" (3) "Defendants shall be barred from discussing their deposition testimony with each other until after the completion of all of the depositions of Defendants;" and (4) "No Defendant shall be allowed to obtain a copy of his own or any other deposition transcript until after the completion of all of the depositions of Defendants." Defendants timely appealed the Order.[1]

II. Analysis

A. Standard of Review

On review of an appeal from a magistrate judge's order on a non-dispositive matter, a district court will modify or set aside the order only where it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C § 636(b)(1)(A).

B. Legal Discussion

Plaintiff's argument in support of the protective order is as follows:

> At the hearing [on Plaintiff's motion], the [Magistrate Judge] asked Plaintiff's counsel which of the grounds identified in Rule 26(c)(1) ("annoyance,

---

[1] The Order also precludes Defendants from being in the same room as Plaintiff during her deposition but requires that they be able to see and hear her deposition via video conferencing in a nearby room. (Order 15.) Defendants do not appeal this aspect of the Order. (See Defs.' Obj. to Order 2 n.1.)

4

>embarrassment, oppression, or undue burden or expense") Plaintiff relied upon in seeking a protective order. Plaintiff's counsel responded, in essence, that the order was needed to protect Plaintiff from an "undue burden" in attempting to obtain information from the individual Defendants regarding what happened to her husband after he was taken into custody. In support of her Motion, Plaintiff notes that "virtually all of the fact witnesses are the Defendants themselves," Plaintiff's Mem. at 5, that Mr. Picard is deceased and cannot provide any evidence of what happened, see id., and that Mrs. Picard was not present when the pepper spray or taser was used against her husband, see id. Plaintiff posits that in the closeknit world of a police department, it is reasonable to assume that each of the police officers will be mindful of the others' testimony and would be reluctant to testify to a conflicting version of events. See id. at 5-6. Plaintiff also suggests that a Defendant's testimony may be inadvertently affected simply by hearing what another Defendant perceived and experienced. See id. at 6. Plaintiff contends that her interest in obtaining "unfiltered, unobstructed[,] and uninfluenced testimony regarding the events of August 20, 2006, outweighs the Defendants' interests in attending the other Defendants' depositions." Id. at 6-7.

(Order 7-8.) Plaintiff's opposition to Defendants' appeal repeats these arguments, further emphasizing the "clearly erroneous" standard of review of magistrate judges' orders on non-dispositive matters.

In their filings, Defendants counter that the weight of authority does not construe Rule 26(c) of the Federal Rules of Civil Procedure to allow for the exclusion of parties from depositions in circumstances like these. They also emphasize facts they believe undercut the Magistrate Judge's reasoning: Defendants already have given written statements concerning the

5

events at issue; the personnel dynamics of the police department have changed so as to reduce the likelihood of perjury; and zealous advocacy, through vigorous cross-examination, is the appropriate safeguard here.

Rule 26(c)(1)(E) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . designating the persons who may be present while the discovery is conducted . . . ." The First Circuit has described Rule 26(c) as "highly flexible, having been designed to accommodate all relevant interests as they arise . . . . [T]he 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Gill v. Gulfstream Park Racing Ass'n., Inc., 399 F.3d 391, 402 (1st Cir. 2005) (quoting United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999)).

Absent a court order to the contrary, parties may attend depositions, and "due to the heightened interests of parties in the proceedings, 'factors that might justify exclusion of non-parties from a deposition might not be sufficient to exclude parties because of the parties' more substantial interests in being present.'" Dade v. Willis, No. Civ.A. 95-6869, 1998 WL 260270, at *1 (E.D. Pa. Apr. 20, 1998) (quoting Hines v.

6

Wilkinson, 163 F.R.D. 262, 266 (S.D. Ohio 1995)). For this reason, courts generally are loath to exclude parties from depositions in the absence of "compelling or exceptional circumstances." BCI Commc'n Sys., Inc. v. Bell Atlanticom Sys., Inc., 112 F.R.D. 154, 160 (N.D. Ala. 1986); see also Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973) (stating that "such an exclusion should be ordered rarely indeed"); Kerschbaumer v. Bell, 112 F.R.D. 426, 426 (D.D.C. 1986) ("Most courts have granted protective orders to bar parties from attending depositions only in very limited circumstances.").

The lynchpin of Plaintiff's argument is that there is good cause in these circumstances to exclude Defendants from the depositions of their co-Defendants, because their presence unduly burdens Plaintiff's ability to solicit truthful testimony. The Order adopts this reasoning and emphasizes what the Magistrate Judge understands to be the unique nature of this case: namely that, Mr. Picard is deceased; Defendants are the only witnesses to some of the events most pertinent to this suit; and Defendants work (or used to work) for the same police department in a relatively small city. (See Order 13.)

The plain reading of Rule 26(c)(1) makes pellucid that "undue burden and expense" refers to the logistics of conducting discovery, not the prosecution of a party's case. Even if

"undue burden" could be read in the manner Plaintiff suggests, Plaintiff has not made a showing of good cause.

The weight of the authority holds that parties should not be excluded from depositions "because of some inchoate fear that perjury would otherwise result." Laws v. Cleaver, No. 3:96CV92 (JBA)(JGM), 2000 WL 87160, at *1 (D. Conn. Jan. 6, 2000) (quoting Kerschbaumer, 112 F.R.D. at 427); see also Baylis v. Pirelli Armstrong Tire Corp., No. 3:97 CV 729 PCD, 1997 WL 1052016, at *2 (D. Conn. Oct. 31, 1997) ("Tactical considerations such as a desire to secure the independent recollection of witnesses or avoid the tailoring of testimony are per se not compelling and will not justify exclusion [of parties]. We will not restructure the adjudicative process to manufacture opportunities for counsel to 'catch' witnesses in inconsistent statements. . . . For such we must rely on the competence and skill of counsel in cross-examination." (quoting Visor v. Sprint/United Management Co., No. CIV.A. 96-K-1730, 1997 WL 567923, at *3 (D. Colo. Aug. 18, 1997))). But see McKenna v. City of Philadelphia, Nos. Civ.A. 98-5835, Civ.A. 99-1163, 2000 WL 1781916, at *2 (E.D. Pa. Nov. 9, 2000); Dade, 1998 WL 260270, at *4. Simply put, credibility is an issue in every case, and without a specific, particularized reason for believing that these Defendants are any more likely than the average defendants to provide perjurious testimony, the Court is

8

not free to exclude Defendants from proceedings in a suit they have been called upon to defend.  See Kerschbaumer, 112 F.R.D. at 426 ("Nor can the Court discover any principle to support granting plaintiffs' motion here but denying similar motions in the numberless other cases where credibility looms large."). Testimony of one defendant closely mirroring that of another is grist for the adversarial-system mill, which serves as the traditional and well-tested safeguard for perjury.

The Court concludes that, in these circumstances, such a protective order cannot be supported by the plain language of Rule 26(c) or the precedent construing it.  Therefore, the Court must set aside the Order as "clearly erroneous."

III. Conclusion

For the reasons set forth above, the Order is VACATED, Plaintiff's motion for a protective order is GRANTED insofar as Defendants are precluded from being in the same room as Plaintiff during her deposition, but Defendants must be able to see and hear the deposition via video conferencing in a nearby room.  Plaintiff's motion is DENIED in all other respects.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: August 23, 2011